# Exhibit 1

EXECUTION COPY

# PLEDGE AGREEMENT
### [Steven Lynam]

THIS PLEDGE AGREEMENT (as the same may be amended, restated, supplemented or otherwise modified from time to time, this "<u>Agreement</u>") dated as of November 21, 2014, is made by Steven Lynam ("<u>Pledgor</u>"), in favor of Hamilton Capital VIII LLC, a Delaware limited liability company (together with any successors or assigns, collectively, the "<u>Lender</u>").

## RECITALS

A. Reference is made to that certain Nonrecourse Loan and Security Agreement (as the same may be amended, restated, supplemented or otherwise modified from time to time, the "<u>Loan Agreement</u>") of even date herewith by and among (i) Total Asset Recovery Services LLC a Michigan limited liability company and G3 Analytics LLC, a Michigan limited liability company (collectively, the "<u>Borrowers</u>"), (ii) Pledgor and the other "Principals" (as defined in the Loan Agreement) and (iii) Lender, pursuant to which Loan Agreement Lender has agreed to make certain financial accommodations in favor of Borrowers.

B. Reference is further made to that certain Guaranty of Pledgor in favor of Lender of even date herewith (as the same may be amended, restated, supplemented or otherwise modified from time to time, the "<u>Guaranty</u>") whereby Guarantor has guaranteed Borrowers' obligations under the Loan Agreement.

C. Pledgor is the record and beneficial owner of equity interests in one of the Borrowers, and as such is a direct and indirect beneficiary of the financial accommodations made available to Borrowers under the Loan Agreement.

D. In order to induce Lender to enter into the Loan Agreement and the other Loan Documents and to induce Lender to make the financial accommodations as provided for in the Loan Agreement and as a condition to Lender's agreements thereunder, Pledgor has agreed to enter into this Agreement.

## AGREEMENT

NOW, THEREFORE, in consideration of the premises and the covenants hereinafter contained and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Pledgor and Lender agree as follows:

1. <u>Definitions</u>. Unless otherwise defined herein, capitalized terms or matters of construction defined or established in the Loan Agreement shall be applied herein as defined or established therein, and the following terms shall have (unless otherwise provided elsewhere in this Agreement) the following respective meanings:

"<u>Additional Interests</u>" shall have the meaning assigned to it in **Section 2**.

"<u>Certificated Security</u>" means an equity interest which is a "security" for purposes of Article 8 of any relevant UCC.

"<u>Operating Agreement</u>" shall mean the operating agreement listed in **Schedule I** hereto, as amended, supplemented or otherwise modified from time to time.

"<u>Pledged Collateral</u>" shall have the meaning assigned to it in **Section 2**.

"<u>Pledged Entity</u>" shall mean the issuer of the Pledged Interests.

"<u>Pledged Interests</u>" shall mean those limited liability company interests listed in **Schedule I**.

"Secured Obligations" shall have the meaning assigned to it in **Section 3**.

2. Pledge.  Pledgor hereby pledges, grants, bargains, assigns, transfers, conveys, mortgages and hypothecates to Lender a first priority Lien on all of its right, title and interest in and to all of the following (collectively, the "Pledged Collateral"):

(a) the Pledged Interests held by it and the certificates, if any, representing such Pledged Interests, together with (i) all of Pledgor's rights, powers and remedies under the Operating Agreement and (ii) all distributions, cash, Instruments and other property or Proceeds from time to time received, receivable or otherwise distributed in respect of or in exchange for any or all of such Pledged Interests;

(b) any additional limited liability company interests or other equity interests in the Pledged Entity from time to time acquired by Pledgor in any manner after the date hereof (which interests shall be deemed to be part of the Pledged Interests) (collectively, the "Additional Interests"), and the certificates, if any, representing such Additional Interests, and all distributions, cash, Instruments and other property or Proceeds from time to time received, receivable or otherwise distributed in respect of or in exchange for any or all of such Additional Interests; and

(c) to the extent not otherwise included, all Proceeds and products of any and all of the foregoing.

3. Security for Obligations.  This Agreement secures, and the Pledged Collateral is security for, the prompt payment in full when due, whether at stated maturity, by acceleration or otherwise, and performance of all of Pledgor's obligations under the Loan Agreement (including its indemnification obligations), the Guaranty (including the "Obligations" as defined therein), and this Agreement, together with all fees, costs and expenses whether in connection with collection actions hereunder or otherwise in connection with the Obligations (collectively, the "Secured Obligations").

4. Rights of Lender; Limitations on Lender's Obligations.  Anything herein to the contrary notwithstanding, Pledgor shall, for so long as it shall remain a member under the Operating Agreement, remain liable under such Operating Agreement to observe and perform all the conditions and obligations to be observed and performed by it thereunder, all in accordance with and pursuant to the terms and provisions thereof.  Lender shall not have any obligation or liability by reason of or arising out of this Agreement or the receipt by Lender of any payment relating to any Pledged Collateral pursuant hereto (other than to return all or a portion of such payment if either Lender or Pledgor would be required by law to do so), nor shall Lender be obligated in any manner (a) to perform any of the duties or obligations of Pledgor under or pursuant to the Operating Agreement, (b) to make any payment or to make any inquiry as to the nature or the sufficiency of any payment received by Lender or as to the sufficiency of any performance by any party under the Operating Agreement or (c) to present or file any claim, to take any action to enforce any performance or to collect the payment of any amounts which may have been assigned to Lender or to which it may be entitled at any time or times, pursuant to this Agreement or the Operating Agreement.

5. Certain Matters Relating to the Pledged Collateral.

(a) Pledgor hereby instructs each the Pledged Entity to register all of the Pledgor's right, title and interest in and to all of the Pledgor's interest in the equity of the Pledged Entity as subject to a pledge and security interest in favor of Lender who, upon such registration of pledge, shall become a registered pledgee of such equity with all rights incident thereto.  The Pledged Entity is hereby instructed by Pledgor to promptly inform Lender of the registration of the pledge by sending an Acknowledgment of Registration Statement, substantially in the form of Exhibit I attached hereto, to Lender at the address of Lender specified in the Loan Agreement.

  (b) To the extent that the membership interests evidencing the Pledged Collateral are, in contravention of Section 7(f) hereof, at any time hereafter certificated, the certificates evidencing such membership interest shall be immediately delivered to and held by or on behalf of Lender pursuant hereto, accompanied by duly executed instruments of transfer or assignment in blank, all in form and substance satisfactory to Lender.

6. <u>Representations and Warranties</u>.  Pledgor represents and warrants to Lender that:

  (a) The execution, delivery and performance of this Agreement by Pledgor: (i) do not violate any material law or regulation, or any order or decree of any court or Governmental Authority; (ii) do not conflict with or result in the breach or termination of, constitute a default under or accelerate or permit the acceleration of any performance required by, any indenture, mortgage, deed of trust, lease or other instrument to which Pledgor is a party or by which Pledgor or any of its property is bound; (iii) do not result in the creation or imposition of any Lien upon any the Pledged Collateral other than those in favor of the Lender; and (iv) do not require the consent or approval of any Governmental Authority or any other Person.

  (b) Pledgor is, and at the time of delivery of the Pledged Collateral owned or held by it to Lender will be, the sole holder of record and the sole beneficial owner of such Pledged Collateral pledged by it free and clear of any Lien thereon or affecting the title thereto, except for any Lien created by this Agreement;

  (c) All of the Pledged Collateral owned by Pledgor has been duly authorized, validly issued and is fully paid and nonassessable (except as may be contemplated in the Operating Agreement);

  (d) Pledgor has the right and requisite authority to pledge, assign, transfer, deliver, deposit and set over the Pledged Collateral pledged by Pledgor to Lender as provided herein;

  (e) None of the Pledged Collateral owned or held by Pledgor has been issued or transferred in violation of the securities registration, securities disclosure or similar laws of any jurisdiction to which such issuance or transfer may be subject;

  (f) Pledgor is the sole owner of the Pledged Collateral pledged by it hereunder. The membership units in the Pledged Entity are not Certificated Securities and are not evidenced by certificates.  As of the date hereof, there are no existing options, warrants, calls or commitments of any character whatsoever relating to the Pledged Collateral pledged by Pledgor hereunder;

  (g) A true and correct copy of the Operating Agreement, including all amendments, supplements and other modifications thereto, has been previously delivered to Lender;

  (h) The Operating Agreement is a legal, valid and binding agreement, enforceable by and against Pledgor in accordance with its terms;

  (i) No additional contributions are required to be made by Pledgor in respect of the Pledged Collateral and Pledgor has no liabilities or obligations, monetary or otherwise, to the Pledged Entity;

  (j) Other than the Operating Agreement and this Agreement, Pledgor is not subject to any member agreement, voting agreement or any other agreement in respect of the rights of members in connection with the Pledged Collateral;

        (k)        No consent, approval, authorization or other order or other action by, and no notice to or filing with, any Governmental Authority or any other Person is required (i) for the pledge by Pledgor of the Pledged Collateral owned or held by it pursuant to this Agreement or for the execution, delivery or performance of this Agreement by Pledgor, or (ii) for the exercise by Lender of the voting or other rights provided for in this Agreement or the remedies in respect of such Pledged Collateral pursuant to this Agreement, except as may be required in connection with such disposition by laws affecting the offering and sale of securities generally;

        (l)        The pledge, assignment and, if applicable, delivery of the Pledged Collateral owned or held by it pursuant to this Agreement, together with the filing of appropriate UCC financing statements describing the Pledged Collateral with the Secretary of State of the jurisdiction where Pledgor's residence is located, will create a valid first priority Lien on and a first priority perfected security interest in favor of Lender upon such Pledged Collateral and the Proceeds thereof, securing the payment of the Secured Obligations, subject to no other Lien except for any Lien created by this Agreement; and

        (m)        Pledgor's principal residence is located in the state of Ohio.

The representations and warranties set forth in this **Section 6** shall survive the execution and delivery of this Agreement.

    7.    <u>Covenants</u>.  Pledgor covenants and agrees that until the Secured Obligations have been paid and satisfied in full:

        (a)        Pledgor will not sell, assign, transfer, pledge, or otherwise encumber any of its rights in or to any Pledged Collateral owned or held by it, or any unpaid dividends, interest or other distributions or payments with respect to such Pledged Collateral, or grant a Lien on such Pledged Collateral, except as otherwise expressly permitted by the Loan Agreement;

        (b)        Pledgor will, at its expense, promptly take all actions deemed necessary or desirable by Lender, from time to time, in order to protect and perfect the Lien in favor of Lender upon the Pledged Collateral, including the filing of any necessary UCC financing statements or the equivalent, which may be filed by Lender without the signature of Pledgor;

        (c)        Pledgor has and will defend the title to the Pledged Collateral owned or held by it and the Liens of Lender in such Pledged Collateral against the claim of any Person and will maintain and preserve such Liens;

        (d)        Pledgor will, upon obtaining ownership of any Additional Interests, promptly (and in any event within three Business Days after it acquires any such Additional Interests) deliver to Lender a Pledge Amendment, duly executed by Pledgor, in form and substance acceptable to Lender (each, a "<u>Pledge Amendment</u>"), in respect of any such Additional Interests, pursuant to which Pledgor shall deliver and pledge to Lender all of such Additional Interests.  Pledgor hereby authorizes Lender to attach each such Pledge Amendment to this Agreement and agrees that all Pledged Collateral listed in any such Pledge Amendment shall for all purposes hereunder be considered Pledged Collateral; and

        (e)        Pledgor shall comply in all respects with the terms and conditions of the Operating Agreement and all other contracts and agreements relating to the Pledged Collateral, none of which may be amended, supplemented or otherwise modified by Pledgor without the prior written consent of Lender.

(f)     Pledgor shall not, nor shall it take any action that would directly or indirectly permit the Pledged Entity to, cause or allow the Pledged Interests to become Certificated Securities or to be certificated.

(g)     Pledgor shall give Lender 30 days advance notice before changing the state of Pledgor's residence.

8.     <u>Pledgor's Rights</u>.  So long as no Default or Event of Default shall have occurred and be continuing and until written notice shall be given to Pledgor in accordance with **Section 9(a)**:

(a)     Pledgor shall have the right, from time to time, to vote and give consents with respect to the Pledged Collateral pledged by it hereunder or any part thereof for all purposes not inconsistent with the provisions of this Agreement, the Loan Agreement or any other Loan Document; <u>provided</u>, that no vote shall be cast, and no consent shall be given or action taken, that would have the effect of impairing the position or interest of Lender in respect of the Pledged Collateral or that would authorize, effect or consent to (unless and to the extent expressly permitted by the Loan Agreement):

(i)     the dissolution, liquidation or winding down of affairs, in whole or in part, of the Pledged Entity;

(ii)    the consolidation or merger of the Pledged Entity with any other Person;

(iii)   the sale, disposition or encumbrance of all or substantially all of the assets of the Pledged Entity, except for Liens in favor of Lender;

(iv)    (A) any change in the capital structure of the Pledged Entity or (B) the issuance of any additional membership interests of any Pledged Entity; or

(v)     the alteration of the voting rights with respect to the Pledged Collateral.

(b)     Pledgor shall be entitled, from time to time, to collect and receive for its own use all cash dividends, distributions and interest paid in respect of the Pledged Collateral pledged by it hereunder to the extent not in violation of the Loan Agreement, except for any and all: (i) dividends, distributions and interest paid or payable other than in cash in respect of any such Pledged Collateral, received, receivable or otherwise distributed in respect of, or in exchange for, any such Pledged Collateral; (ii) dividends and other distributions paid or payable in cash in respect of any such Pledged Collateral in connection with a partial or total liquidation or dissolution or in connection with a reduction of capital, capital surplus or paid-in capital of the Pledged Entity; and (iii) cash paid, payable or otherwise distributed in respect of principal of, or in redemption of, or in exchange for, any such Pledged Collateral; <u>provided</u>, that until actually paid all rights to such distributions shall remain subject to the Lien in favor of Lender created by this Agreement and the other Loan Documents.

(c)     All dividends, distributions and interest (other than such cash dividends, distributions and interest as are permitted to be paid to Pledgor in accordance with **clause (b)** above) in respect of any of the Pledged Collateral, whenever paid or made, shall be delivered to Lender to hold as Pledged Collateral and shall, if received by Pledgor, be received in trust for the benefit of Lender be segregated from the other property or funds of Pledgor, and be forthwith delivered to Lender as Pledged Collateral in the same form as so received (with any necessary indorsements).

9. <u>Defaults and Remedies; Proxy</u>.

(a) Upon the occurrence and during the continuation of any Event of Default, and concurrently with written notice to Pledgor, Lender (personally or through an agent) is hereby authorized and empowered to transfer and register in its name or in the name of its nominee the whole or any part of the Pledged Collateral pledged by Pledgor hereunder, to exchange certificates or Instruments representing or evidencing such Pledged Collateral for certificates or Instruments of smaller or larger denominations, to exercise the voting and all other rights as a holder with respect thereto, to collect and receive all cash dividends, interest, principal and other distributions made thereon, to sell in one or more sales after ten days' notice of the time and place of any public sale or of the time at which a private sale is to take place (which notice Pledgor agrees is commercially reasonable) the whole or any part of such Pledged Collateral and to otherwise act with respect to such Pledged Collateral as though Lender were the outright owner thereof. Any sale shall be made at a public or private sale at Lender's place of business, or at any place to be named in the notice of sale, either for cash or upon credit or for future delivery at such price as Lender may deem fair, and Lender may be the purchaser of the whole or any part of such Pledged Collateral so sold and hold the same thereafter in its own right free from any claim of Pledgor or any right of redemption. Each sale shall be made to the highest bidder, but Lender reserves the right to reject any and all bids at such sale that, in its discretion, it shall deem inadequate. Demands of performance, except as otherwise herein specifically provided for, notices of sale, advertisements and the presence of property at sale are hereby waived and any sale hereunder may be conducted by an auctioneer or any officer or agent of Lender. PLEDGOR HEREBY REVOKES ALL PREVIOUS PROXIES WITH REGARD TO THE PLEDGED COLLATERAL AND IRREVOCABLY CONSTITUTES AND APPOINTS LENDER AS THE PROXY AND ATTORNEY-IN-FACT OF PLEDGOR WITH RESPECT TO THE PLEDGED COLLATERAL PLEDGED BY PLEDGOR HEREUNDER, INCLUDING THE RIGHT TO VOTE THE PLEDGED COLLATERAL OF PLEDGOR, WITH FULL POWER OF SUBSTITUTION TO DO SO. THE APPOINTMENT OF LENDER AS PROXY AND ATTORNEY-IN-FACT IS COUPLED WITH AN INTEREST AND SHALL BE IRREVOCABLE UNTIL THE SECURED OBLIGATION HAVE BEEN PAID AND PERFORMED IN FULL. IN ADDITION TO THE RIGHT TO VOTE THE PLEDGED COLLATERAL OF PLEDGOR, THE APPOINTMENT OF LENDER AS PROXY AND ATTORNEY-IN-FACT SHALL INCLUDE THE RIGHT TO EXERCISE ALL OTHER RIGHTS, POWERS, PRIVILEGES AND REMEDIES TO WHICH A HOLDER OF SUCH PLEDGED COLLATERAL WOULD BE ENTITLED (INCLUDING GIVING OR WITHHOLDING WRITTEN CONSENTS OF MEMBERS, AS APPLICABLE, CALLING SPECIAL MEETINGS OF MEMBERS, AS APPLICABLE, AND VOTING AT SUCH MEETINGS). SUCH PROXY SHALL BE EFFECTIVE, AUTOMATICALLY AND WITHOUT THE NECESSITY OF ANY ACTION (INCLUDING ANY TRANSFER OF SUCH PLEDGED COLLATERAL ON THE RECORD BOOKS OF THE ISSUER THEREOF) BY ANY PERSON (INCLUDING THE ISSUER OF SUCH PLEDGED COLLATERAL OR ANY OFFICER OR LENDER THEREOF), UPON THE OCCURRENCE OF AN EVENT OF DEFAULT. NOTWITHSTANDING THE FOREGOING, LENDER SHALL NOT HAVE ANY DUTY TO EXERCISE ANY SUCH RIGHT OR TO PRESERVE THE SAME AND SHALL NOT BE LIABLE FOR ANY FAILURE TO DO SO OR FOR ANY DELAY IN DOING SO.

(b) If, at the original time or times appointed for the sale of the whole or any part of the Pledged Collateral pledged by Pledgor hereunder, (i) the highest bid, if there is but one sale, shall be inadequate to discharge in full all the Secured Obligations, or (ii) such Pledged Collateral is offered for sale in lots, the highest bid for the lot offered for sale at any of such

sales would indicate to Lender, in its discretion, that the proceeds of the sales of the whole of such Pledged Collateral would be unlikely to be sufficient to discharge all the Secured Obligations, then Lender may, on one or more occasions and in its discretion, postpone any of said sales by public announcement at the time of sale or the time of previous postponement of sale, and no other notice of such postponement or postponements of sale need be given, any other notice being hereby waived; provided, that any sale or sales made after such postponement shall be after ten days' notice to Pledgor.

(c) If, at any time when Lender shall determine to exercise its right to sell the whole or any part of the Pledged Collateral hereunder, such Pledged Collateral or the part thereof to be sold shall not, for any reason whatsoever, be effectively registered under the Securities Act (or any similar statute), then Lender may, in its discretion (subject only to applicable requirements of law), sell such Pledged Collateral or part thereof by private sale in such manner and under such circumstances as Lender may deem necessary or advisable, but subject to the other requirements of this **Section 9**, and shall not be required to effect such registration or to cause the same to be effected.

(d) Pledgor recognizes that Lender may be unable to effect a public sale of any or all the Pledged Collateral and may be compelled to resort to one or more private sales thereof in accordance with **clause (c)** above. Pledgor also acknowledges that any such private sale may result in prices and other terms less favorable to the seller than if such sale were a public sale and, notwithstanding such circumstances, agrees that any such private sale shall not be deemed to have been made in a commercially unreasonable manner solely by virtue of such sale being private. Lender shall be under no obligation to delay a sale of any of the Pledged Collateral for the period of time necessary to permit the applicable Pledged Entity to register such securities for public sale under the Securities Act, or under applicable state securities laws, even if Pledgor and the Pledged Entity would agree to do so.

(e) Pledgor agrees to the maximum extent permitted by applicable law that following the occurrence and during the continuance of an Event of Default it will not at any time plead, claim or take the benefit of any appraisal, valuation, stay, extension, moratorium or redemption law now or hereafter in force in order to prevent or delay the enforcement of this Agreement, or the absolute sale of the whole or any part of the Pledged Collateral or the possession thereof by any purchaser at any sale hereunder, and Pledgor waives the benefit of all such laws to the extent it lawfully may do so. Pledgor agrees that it will not interfere with any right, power or remedy of Lender provided for in this Agreement or now or hereafter existing at law or in equity or by statute or otherwise, or the exercise or beginning of the exercise by Lender of any one or more of such rights, powers or remedies. No failure or delay on the part of Lender to exercise any such right, power or remedy and no notice or demand that may be given to or made upon Pledgor by Lender with respect to any such remedies shall operate as a waiver thereof, or limit or impair Lender's right to take any action or to exercise any power or remedy hereunder, without notice or demand, or prejudice its rights as against Pledgor in any respect.

(f) Pledgor further agrees that a breach of any of the covenants contained in this **Section 9** will cause irreparable injury to Lender, that Lender shall have no adequate remedy at law in respect of such breach and, as a consequence, agrees that each and every covenant contained in this **Section 9** shall be specifically enforceable against Pledgor, and Pledgor hereby waives and agrees not to assert any defenses against an action for specific performance of such covenants except for a defense that the Secured Obligations are not then due and payable in accordance with the agreements and Instruments governing and evidencing the Secured Obligations.

10. <u>Miscellaneous</u>.

(a) <u>Waiver</u>.  No delay on Lender's part in exercising any power of sale, Lien, option or other right hereunder, and no notice or demand that may be given to or made upon Pledgor by Lender with respect to any power of sale, Lien, option or other right hereunder, shall constitute a waiver thereof, or limit or impair Lender's right to take any action or to exercise any power of sale, Lien, option, or any other right hereunder, without notice or demand, or prejudice Lender's rights as against Pledgor in any respect.

(b) <u>Severability</u>.  If any provision of this Agreement or portion of such provision or the application thereof to any Person or circumstance shall to any extent be held invalid or unenforceable, the remainder of this Agreement (or the remainder of such provision) and the application thereof to other Persons or circumstances shall not be affected thereby.

(c) <u>Counterparts</u>.  This Agreement may be executed in two or more counterparts, each of which shall be an original, but all of which shall constitute but one agreement.  Delivery of an executed counterpart of this Agreement by facsimile or electronic mail shall be equally as effective as delivery of an original executed counterpart of this Agreement.  Any party delivering an executed counterpart of this Agreement by facsimile or electronic mail also shall deliver an original executed counterpart of this Agreement to the other party but the failure to deliver an original executed counterpart shall not affect the validity, enforceability, and binding effect of this Agreement.

(d) <u>Complete Agreement</u>.  This Agreement constitutes the entire agreement and understanding between the parties hereto relating to the subject matter hereof, and supersedes all prior proposals, negotiations, agreements and understandings between the parties hereto with respect to such subject matter.

(e) <u>Binding Effect of Agreement; Assignments</u>..  This Agreement shall be binding upon and inure to the benefit of the respective administrators, legal representatives, successors and assigns of the parties hereto, and shall remain in full force and effect (and Lender shall be entitled to rely thereon) until all Secured Obligations are fully paid.  Pledgor may not assign or transfer any of its rights or obligations under this Agreement.  Lender may transfer and assign this Agreement and deliver the Pledged Collateral to the assignee, who shall thereupon have all of the rights of Lender; and Lender shall then be relieved and discharged of any responsibility or liability with respect to this Agreement, and the Pledged Collateral.

(f) <u>Further Assurances</u>.  Pledgor will from time to time execute and deliver to Lender, and take or cause to be taken, all such other or further action as Lender may reasonably request in order to effect and confirm or vest more securely in Lender all rights contemplated by this Agreement or to vest more fully in or assure to Lender the Lien on the Pledged Collateral granted to Lender by this Agreement or to comply with applicable statute or law and to facilitate the collection of the Pledged Collateral.  Pledgor authorizes Lender to file financing statements, continuation statements or amendments without Borrowers' signatures appearing thereon, indicating a security interest in the Pledged Collateral and any such financing statements, continuation statements or amendments may be signed by Lender on behalf of Pledgor, if necessary, and may be filed at any time in any jurisdiction.  In addition, Pledgor shall at any time and from time to time take such commercially reasonable steps as Lender may reasonably request for Lender to insure the continued perfection and priority of Lender's Lien on any of the Pledged Collateral and the preservation of its rights therein.  Pledgor hereby appoints Lender as its attorney-in-fact to execute, if necessary, and file all filings required or so requested for the foregoing purposes, all acts of such attorney being hereby ratified and confirmed; and such power, being coupled with an interest, shall be

irrevocable until this Agreement terminates in accordance with its terms, all Obligations are paid in full and the Pledged Collateral is released.

(g) <u>Amendments and Waivers</u>.  This Agreement may not be amended, or the obligations of the parties hereto modified, except in a writing executed by each of the parties. No delay or omission on the part of Lender in exercising any right hereunder shall operate as a waiver of such right or any other right and waiver on any one or more occasions shall not be construed as a bar to or waiver of any right or remedy of Lender on any future occasion.

(h) <u>Notices</u>.  All notices, requests, demands and other communications to or upon Lender or Pledgor hereunder shall be: (i) in writing; (ii) delivered and deemed received in accordance with the procedures set forth in Section 8.12 of the Loan Agreement; and (iii) addressed to the parties at the address, facsimile number or email address provided in Section 8.12 of the Loan Agreement.  Any party hereto may change its address, facsimile number or email address for notices and other communications hereunder by notice to all of the other parties hereto in accordance with the foregoing.

(i) <u>Governing Law</u>.  This Agreement and all transactions entered into hereunder or pursuant hereto shall be governed as to interpretation, validity, effect, rights, duties and remedies of the parties thereunder and in all other respects by the domestic laws of the State of New York without reference to conflicts of law principles.

(j) <u>Consent to Exclusive Jurisdiction; Waiver of Jury Trial</u>.  PLEDGOR IRREVOCABLY SUBMITS TO THE EXCLUSIVE JURISDICTION OF ANY NEW YORK STATE COURT SITTING IN THE COUNTY OF NEW YORK, NEW YORK AND/OR ANY UNITED STATES OF AMERICA COURT SITTING IN THE SOUTHERN DISTRICT OF NEW YORK, AS LENDER MAY ELECT, IN ANY SUIT, ACTION OR PROCEEDING ARISING OUT OF OR RELATING TO THIS AGREEMENT OR ANY OTHER LOAN DOCUMENT. PLEDGOR HEREBY IRREVOCABLY AGREES THAT ALL CLAIMS IN RESPECT TO SUCH SUIT, ACTION OR PROCEEDING MAY BE HELD AND DETERMINED IN ANY OF SUCH COURTS. PLEDGOR IRREVOCABLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY LAW, ANY OBJECTION WHICH PLEDGOR MAY NOW OR HEREAFTER HAVE TO THE LAYING OF VENUE OF ANY SUCH SUIT, ACTION OR PROCEEDING BROUGHT IN ANY SUCH COURT, AND PLEDGOR FURTHER IRREVOCABLY WAIVES ANY CLAIM THAT SUCH SUIT, ACTION OR PROCEEDING BROUGHT IN ANY SUCH COURT HAS BEEN BROUGHT IN AN INCONVENIENT FORUM. PLEDGOR AUTHORIZES THE SERVICE OF PROCESS UPON PLEDGOR BY REGISTERED MAIL SENT TO PLEDGOR AT THE ADDRESS DETERMINED PURSUANT TO THIS AGREEMENT. PLEDGOR HEREBY IRREVOCABLY WAIVES THE RIGHT TO TRIAL BY JURY WITH RESPECT TO ANY ACTION IN WHICH PLEDGOR AND LENDER ARE PARTIES RELATING TO OR ARISING OUT OF OR IN CONNECTION WITH THIS AGREEMENT.

(k) <u>Reinstatement</u>.  This Agreement shall remain in full force and effect and continue to be effective should any petition be filed by or against Pledgor or the Pledged Entity for liquidation or reorganization, should Pledgor or the Pledged Entity become insolvent or make an assignment for the benefit of creditors or should a receiver or trustee be appointed for all or any significant part of Pledgor's or the Pledged Entity's assets, and shall continue to be effective or be reinstated, as the case may be, if at any time payment and performance of the Secured Obligations, or any part thereof, is, pursuant to applicable law, rescinded or reduced in amount, or must otherwise be restored or returned by any obligee of the Secured Obligations, whether as a "voidable preference," "fraudulent transfer," or

otherwise, all as though such payment or performance had not been made.  In the event that any payment, or any part thereof, is rescinded, reduced, restored or returned, the Secured Obligations shall be reinstated and deemed reduced only by such amount paid and not so rescinded, reduced, restored or returned.

(l) <u>Advice of Counsel</u>.  Each of the parties represents to each other party hereto that it has discussed this Agreement and, specifically, the provisions of Section 10(j), with its counsel.

(m) <u>Performance By Lender</u>.  If Pledgor fails to perform or comply with any of its agreements contained herein, Lender may in its discretion perform or comply, or otherwise cause performance or compliance, with such agreement, and (a) the expenses of Lender incurred in connection with such performance or compliance, and (b) at the election of Lender (confirmed by written notice from Lender to Borrower), interest on such expenses of Lender at the Prime Rate from time to time in effect as specified in the Wall Street Journal plus 5%, shall be payable by Pledgor to Lender on demand and shall constitute a part of and be included in the Secured Obligations.  Lender may execute any actions authorized hereunder by or through agents or employees and shall be entitled to advice of counsel concerning all matters pertaining to such actions.  Neither Lender, nor any of its representative officers, directors, employees, agents or counsel shall be liable for any action lawfully taken or omitted to be taken by it or them hereunder or in connection herewith, except for its or their own gross negligence or willful misconduct as finally determined by a court of competent jurisdiction.

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]**

IN WITNESS WHEREOF, the parties hereto have caused this Pledge Agreement to be duly executed as of the date first written above.

"**Pledgor**":

Steven Lynam

_/s/ signature_

ROSS M RECTOR
Notary Public, State of Ohio
My Commission Expires
July 29, 20__

"**Lender**":

Hamilton Capital VIII, LLC

By: _____
Name: _____
Title: _____

## ACKNOWLEDGMENT OF PLEDGOR[1]

STATE OF Ohio )
)
) SS.
)
COUNTY OF Lucas )

The foregoing was acknowledged before me this 19 day of November, 2014, by Steven J Lynam.

By: _____
Print Name: Ross M Rector
Notary Public, Ohio County, Lucas
Acting in Lucas, County
My commission expires:

ROSS M RECTOR
Notary Public, State of Ohio
My Commission Expires
July 29, 2018

---

[1] Use this form of state specific form if different

DM_US 56223319.090251.0014

IN WITNESS WHEREOF, the parties hereto have caused this Pledge Agreement to be duly executed as of the date first written above.

"Pledgor":

Steven Lynam

_____

"Lender":

Hamilton Capital VIII, LLC

By: _____
Name: _____Joel Simony_____
Title: _____P/r_____

# EXHIBIT I
Form of Acknowledgment of Registration Statement

Acknowledgment of Registration Statement

**THIS STATEMENT IS MERELY A RECORD OF THE RIGHTS OF THE ADDRESSEE AS OF THE TIME OF ISSUANCE.  DELIVERY OF THIS STATEMENT, OF ITSELF, CONFERS NO RIGHTS ON THE RECIPIENT.  THIS STATEMENT IS NEITHER A NEGOTIABLE INSTRUMENT NOR A SECURITY.**

HAMILTON CAPITAL VIII LLC
152 West 57th Street, 54th Floor
New York, NY 10019
Attention:  Mr. Harvey Werblowsky

On the [__] day of November 2014, the undersigned company ("Company"), caused the pledge of the interests in such Company owned by the Pledgor identified below ("Pledgor"), which as of the date hereof is that percentage of the total ownership interests in the Company specified below for such Pledgor, which has been pledged by such Pledgor in favor of HAMILTON CAPITAL VIII LLC, to be registered on the books and records of Company.  There are no other liens, restrictions or adverse claims to which the interests identified herein are, or may be subject, as of the date hereof.

Pledgor:  Steven Lynam
Ownership Percentage: 5%

                                        Total Asset Recovery Services LLC, a Michigan limited liability company

                                        By: _____
                                        Name: _____
                                        Title: _____

# SCHEDULE I

## PLEDGED INTERESTS

| *Pledged Entity* | *Description of Pledged Interests* | *Description of Operating Agreement* |
|---|---|---|
| Total Asset Recovery Services LLC | 5% of the outstanding membership interests of Pledged Entity | Restated Limited Liability Company Operating Agreement of Total Asset Recovery Services LLC having an effective date of October 29, 2014 |