```
UNITED STATES DISTRICT COURT                    USDC SDNY
SOUTHERN DISTRICT OF NEW YORK                   DOCUMENT
                                                ELECTRONICALLY FILED
                                                DOC#: _____
                                                DATE FILED:  April 4, 2022
```

**Total Asset Recovery Services, et al.,**

                        **Plaintiffs,**

-against-                                                      **1:21-CV-2466-ALC**

**Huddleston Capital Partners VIII LLC, et al.,**              **AMENDED ORDER**

                        **Defendants.**

**ANDREW L. CARTER, JR., United States District Judge:**

Defendants Huddleston Capital Partners LLC, Nolan Cooper, Kenneth Platt Elder, and G3 Analytics LLC move to dismiss the Amended Complaint under Fed. R. Civ. P. 12(b)(6).[1] For the reasons discussed below, Cooper's motion is **granted**, Huddleston's motion is **denied**, and G3 and Elder's motion is **denied in part and granted in part**.

## BACKGROUND

**I. Parties**

Plaintiff Total Asset Recovery Services ("TARS") is a limited liability company organized under the laws of the State of Michigan comprised of five members—Plaintiffs Gregory Lynam, Scott Knott, Thomas Prescott, Steven Lynam, and RZE Holdings (collectively, the "Individual Member Plaintiffs")—that was formed to act as relator in *qui tam* actions seeking recovery of unremitted life insurance proceeds in certain states. Amended Complaint ¶¶ 38-39, ECF No. 52 ("Am. Compl."). Plaintiff the Ferraro Law Firm (the "Ferraro Firm") is a Florida professional association that entered into a Contingency Contract on September 26, 2010 to represent TARS as relator. Am. Compl. ¶ 41, ¶¶ 70-73; Am. Compl., Ex. 8.

Defendant Huddleston Capital Partners VIII LLC ("Huddleston") is a limited liability company organized under the laws of the State of Delaware whose sole shareholder is Defendant Kristina Phelan. Am. Compl. ¶¶ 42, 44. Defendant Nolan Cooper ("Cooper") is a member of Huddleston. Am. Compl. ¶ 43. Huddleston allegedly acted by and through Defendants Timothy D. Scrantom ("Scrantom"), a specialist in offshore and international disputes and litigation finance, and Kenneth Platt Elder ("Elder"), the president and sole member of Defendant G3 Analytics LLC ("G3"). Am. Compl. ¶¶ 45-48, 63. G3 entered into a Consulting Agreement[2] with

---

[1] Since Huddleston has already answered the Amended Complaint, the Court construes its motion as a Rule 12(c) motion.

[2] Elder, by and through G3, originally entered into the Consulting Agreement with TARS as part of an alleged joint venture to identify, investigate, file, and litigate potential whistleblower actions against life insurance companies in certain states. Am. Compl. ¶¶ 64-69. Both Elder and TARS agreed that Elder would remain anonymous because he

TARS on August 20, 2010, which was amended, restated, and supplemented on September 2, 2011 and October 4, 2014. Am. Compl. ¶¶ 50-51.

## II. Factual Allegations

On November 21, 2014, TARS, its members, and G3, acting by and through Elder, entered a Nonrecourse Loan and Security Agreement (the "Nonrecourse Loan") with nonparty lender Hamilton Capital VIII LLC ("Hamilton"), secured by a Promissory Note and other ancillary documents. Am. Compl. ¶¶ 2, 6; Am. Compl., Ex. 1. Represented by the Ferraro Firm, TARS commenced a *qui tam* action in the Supreme Court of the State of New York on December 3, 2010, which was investigated over approximately seven years alongside the Office of the Attorney General ("OAG"). Am. Compl. ¶¶ 74-86. Before the OAG finalized its determination on whether to intervene in the whistleblower action, in 2014, G3 hired a broker to procure a $6 million litigation funding loan for the *qui tam* suit and Elder personally recommended Scrantom to TARS as a litigation finance attorney in the negotiation for the Nonrecourse Loan. Am. Compl. ¶¶ 6, 97-102. On December 1, 2017 and after the OAG declined to intervene in the case, the Ferraro Firm proceeded to litigate the case. Am. Compl. ¶¶ 87-88. After the Supreme Court of the State of New York dismissed the case, TARS appealed and eventually obtained a favorable decision before the First Department in a unanimous order reversing the lower court's dismissal of the case. Am. Compl. ¶¶ 15-16, 90-93.

On December 25, 2015, Elder, G3, and Scrantom sued the Ferraro Firm, alleging ethical violations, professional negligence, and breach of fiduciary duty in an arbitration before the (Ret.) Hon. Ronald C. Dresnick with the American Arbitration Association (the "Florida Arbitration"). Am. Compl. ¶¶ 7, 104, 107. Plaintiffs describe the claims as "specious and unfounded," alleging that Scrantom colluded with Elder (and G3) to "take over the ownership of the *Qui Tam* Action so that they could terminate the Ferraro Firm." Am. Compl. ¶ 108. Approximately two years later, on February 17, 2017, the Ferraro Firm filed a tortious interference action in the United States District Court for the Southern District of Florida based on the allegedly unlawful conduct of Elder, G3, and Scrantom during the Florida Arbitration (the "Florida Federal Action"). Am. Compl. ¶ 8. On April 18, 2017, Elder, G3, and Scrantom agreed to settle the Florida Federal Action, dismiss the Florida Arbitration, and release the Ferraro Firm from any and all claims in the Florida Federal Action. Am. Compl. ¶ 9.

On December 28, 2017, Elder, G3, and Scrantom sued TARS in the Michigan First Circuit Court for the County of Hillsdale, seeking to relitigate issues presented and settled in the Florida Arbitration. This case was eventually dismissed with prejudice against all defendants on May 9, 2018. Am. Compl. ¶¶ 10, 112-114.

On August 2, 2018, Elder, G3, and Scrantom formed Huddleston. Am. Compl. ¶¶ 11, 136. In or about September 2018, the receiver ("Receiver") in a civil enforcement action brought by the Securities and Exchange Commission (SEC) against Platinum Partners Credit Opportunities Master Fund LP ("PPCO"), the managing member of Hamilton, asked TARS for a confidentiality waiver for purposes of marketing the Nonrecourse Loan as a PPCO asset. Am.

---

had ongoing unrelated business relationships with some of the life insurance companies that may have gotten sued in the insurance whistleblower actions. Am. Compl. ¶¶ 67-68.

Compl. ¶¶ 12-13, 137.[3] On April 2, 2019, TARS refused and told the Receiver it intended to purchase the Nonrecourse Loan for itself and likewise informed PPCO and the Receiver that it wanted to bid on the sale of the asset. Am. Compl. ¶¶ 13, 138-40. Plaintiff asserts that Huddleston was formed "for the sole purpose of pursuing the TARS Nonrecourse Loan to interfere with TARS, its members, and their business and contractual relationships with the Ferraro Firm and the OAG." Am. Compl. ¶ 141. In August 2019, the Nonrecourse Loan was marketed to certain investors as a remnant asset with no notice or opportunity for TARS to bid. Am. Compl. ¶¶ 143-44. The Nonrecourse Loan was ultimately sold for $13,100 as a remnant asset on December 14, 2020—four days after TARS's appellate win. Am. Compl. ¶ 145.

Huddleston sent a demand letter (the "Demand Letter") on February 10, 2021 to TARS and its members alleging events of default and demanding immediate payment of $64,596,751.69, as well as $50,000 from the Individual Plaintiffs and RZE Holdings, as pledgors and guarantors, for initial collection and enforcement costs. Am. Compl. ¶¶ 27, 147; Am. Compl., Ex. 4. On the same day, Huddleston wrote a letter to the Ferraro Firm enclosing the Demand Letter and directing the Ferraro Firm to cease all work involving the *qui tam* action. Am. Compl. ¶ 30; Am. Compl., Ex. 5. Payment under the Nonrecourse Loan is conditioned upon a favorable verdict, settlement, or statutory award in the *qui tam* action. Am. Compl. ¶ 28. TARS responded on February 12, 2021 denying the occurrence of any event of default. Am. Compl. ¶¶ 30, 150.[4] On February 18, 2021, Huddleston replied and continued to allege that events of default had occurred and attached the December 14, 2020 Assignment (which Plaintiffs allege is invalid). Am. Compl. ¶¶ 151-52. On March 4, 2021, Huddleston sent another letter to the Ferraro Firm demanding the termination of the Ferraro Firm's engagement in the *qui tam* suit. Am. Compl. ¶ 31. On March 12, 2021, Huddleston filed a Motion for Substitution of Parties in the *qui tam* action, seeking to act as attorney in fact for TARS and to fire the Ferraro Firm. Am. Compl. ¶¶ 32, 154.

Plaintiffs seek declaratory, injunctive, and monetary relief. Am. Compl. ¶ 36. The Ferraro Firm has incurred monetary damages largely in the form of attorneys' fees and costs to defend against earlier lawsuits filed by certain defendants. Am. Compl. ¶ 158.

This action was commenced on March 22, 2021. ECF No. 1. On July 2, 2021, they amended the initial complaint after Huddleston, Elder, and G3 filed motions to dismiss and added Defendants Kristina Phelan, Nolan Cooper, and Timothy D. Scrantom[5] to the case. ECF No. 52. Before the Court are separate motions to dismiss the Amended Complaint filed by Huddleston, Elder/G3 (jointly), and Cooper. ECF Nos. 72-73, 76-77, 92-93. Plaintiffs filed an omnibus opposition to Huddleston's and Elder's/G3's motions, *see* ECF No. 91, and separately opposed Cooper's motion. ECF No. 104. The moving defendants all submitted reply memoranda in support of their motions to dismiss. ECF Nos. 97-98, 109.

---

[3] The SEC action commenced on or about December 19, 2016. Am. Compl. ¶ 130.
[4] Neither Hamilton, its controlling manager PPCO, nor the Receiver in the SEC action asserted that an event of default had occurred or demanded payment from TARS. Am. Compl. ¶¶ 126-29, 131-35.
[5] On October 28, 2021, the Court received Notice of Death of Defendant Timothy D. Scrantom. ECF No. 108. Upon the Stipulation and Agreement between Plaintiffs and Leigh Owen Wilkes, as Personal Representative of the Estate of Timothy D. Scrantom (the "Estate"), and pursuant to Rule 25 of the Federal Rules of Civil Procedure, the Estate was substituted as defendant in place of deceased Timothy Scranton on March 31, 2022. ECF No. 118.

**DISCUSSION**

"The parties' briefs assume that New York law controls, and such 'implied consent . . . is sufficient to establish choice of law.'" *Krumme v. WestPoint Stevens Inc.*, 238 F.3d 133, 138 (2d Cir. 2000) (quoting *Tehran-Berkeley Civil & Environmental Engineers v. Tippetts-Abbett-McCarthy-Stratton*, 888 F.2d 239, 242 (2d Cir. 1989)).

**I. Plaintiffs Adequately Plead Claims for Tortious Interference with a Prospective Business Relationship Against Defendants Huddleston, Elder, and G3**

Plaintiffs assert that Huddleston, Elder, G3, and Cooper have known of the attorney-client relationship between the Ferraro Firm and TARS because of the *qui tam* suit and "intentionally, unjustifiably, and maliciously interfered" in a "deliberate attempt" to terminate the Contingency Contract between them and deprive the Ferraro Firm of its contingency fee for legal services provided to TARS in the *qui tam* action. Am. Compl. ¶¶ 194-195, 210-211, 226-27, 233-35. The Ferraro Firm now alleges that its representation of TARS, and its performance of the contingency agreement to act as counsel in the whistleblower suit, is not possible because there is now an indefinite stay in the *qui tam* action pending determination by this Court "whether Huddleston is entitled to exercise power of attorney rights over TARS." Am. Compl. ¶¶ 196, 212, 228. At this early pleading stage, the Court concludes that Plaintiffs state a claim for tortious interference with a prospective business relationship as to Elder, G3, and Huddleston. The claim against Cooper, however, is dismissed.

To successfully plead a claim for tortious interference with a prospective business relationship, a Plaintiff must allege the following: (1) a business relationship with a third party; (2) the defendant's knowledge of that relationship and the intentional interference with it; (3) that the defendant acted solely out of malice, or used dishonest, unfair, or improper means; and (4) the defendant's interference caused injury to the relationship. *Kirch v. Liberty Media Corp.*, 449 F.3d 388, 401-02 (2d Cir. 2006) (citing *Carvel Corp. v. Noonan*, 350 F.3d 6, 17 (2d Cir. 2003). Additionally, plaintiffs must show that defendant's interference was the "but for" cause of the alleged injury. *See Union Car Advertising Co., v. Collier,* 263 N.Y. 386, 400–401, 189 N.E. 463). To demonstrate "but for" causation, a plaintiff must show that any injury would not have occurred but for the intentional interference. *Sharma v. Skaarup Ship Mgmt. Corp.*, 916 F.2d 820, 828 (2d Cir. 1990).

A. Elder, G3, and Huddleston

Here, Plaintiffs have sufficiently pleaded a claim for tortious interference with a prospective business relationship as to Huddleston, Elder, and G3. First, Plaintiffs allege a business relationship with a third party. The Amended Complaint alleges a business relationship between TARS and the Ferraro Firm (third party), as well as a business relationship between the Ferraro Firm and TARS (third party). Plaintiffs' complaint extensively explains the Contingency Contract and the ongoing, multi-year attorney-client relationship between them. "As federal courts applying New York law have recognized, conduct constituting tortious interference with business relations is, by definition, conduct directed *not at the plaintiff itself, but at the party with which the plaintiff has or seeks to have a relationship*." *Carvel Corp. v. Noonan*, 3 N.Y.3d

182, 192, 818 N.E.2d 1100 (2004) (collecting cases) (emphasis added). Both Defendants and Plaintiffs misstate the meaning of "third party" in the context of tortious interference claims. To clarify, both TARS and the Ferraro Firm are each allowed to assert separate claims for tortious interference regarding conduct directed at the other in the same lawsuit at the motion to dismiss stage. Defendants also fail to cite any legal support for the proposition that multiple plaintiffs on opposing sides of a business relationship cannot bring claims for tortious interference in the same action. So long as neither plaintiff is asserting a claim in its own right for conduct directed at itself, the first element is satisfied. *Id.*

Second, Plaintiffs properly plead that Huddleston, Elder, and G3 knew of the business relationship and intentionally interfered in it, which is not only demonstrated by awareness of the Contingency Contract and the Ferraro Firm's ongoing representation of TARS in the *qui tam* action, but also through their "deliberate attempt to terminate the Contingency Contract" and to "deprive the Ferraro Firm of its contingent fee for legal services rendered" in connection with the whistleblower action. Am. Compl. ¶¶ 193-95, 209-211, 225-227. TARS specifically engaged G3, through Elder, as a consultant to investigate and assist with possible whistleblower actions as part of their consulting arrangement. (Am. Compl. ¶¶ 64-69). Nearly a month later, TARS retained the Ferraro Firm to litigate the New York whistleblower action (Am. Compl. ¶ 70). After commencing that lawsuit, G3, through Elder, hired a broker to help procure $6 million in litigation financing for the *qui tam* action. Am. Compl. ¶¶ 6, 97-102. With knowledge of the business relationship, Plaintiffs aver that G3, Elder, and Huddleston intentionally interfered by suing the Ferraro Firm in the Florida Arbitration, by suing TARS in the Michigan Case, and by forming Huddleston, in collusion with others, "for the sole purpose of pursuing the TARS Nonrecourse Loan" and "to terminate the Ferraro Firm." Am. Compl. ¶¶ 7, 10-11, 104, 107-08, 112-14, 136, 141. Huddleston, through G3 and Elder, also filed a Motion for Substitution of Counsel in the *qui tam* suit seeking to act as attorney-in-fact for TARS and to fire the Ferraro Firm. Am. Compl. ¶¶ 32, 154. Plaintiffs cannot further litigate the *qui tam* action at the moment because Defendants' conduct has caused another interference: an indefinite stay of the *qui tam* proceedings pending a ruling from this Court on "whether Huddleston is entitled to exercise power of attorney rights over TARS." Am. Compl. ¶¶ 174, 196, 212, 228. Taking the factual allegations as true, Plaintiffs have sufficiently pleaded the second element of this claim.

Third, Plaintiffs allege that the interference was malicious, dishonest, unfair, and improper. In general, to satisfy the third element, a plaintiff must establish that "the defendant's conduct [amounted] to a crime or an independent tort." *Valley Lane Industries Co., v. Victoria's Secret Direct Bran Management, L.L.C.*, 455 Fed.Appx 102, 105-06 (2d Cir. 2012) (summary order). Lawful conduct is generally insufficient to give rise to the required level of culpability. *Id.* at 106. Yet, an exception to this general rule exists if a plaintiff "can demonstrate that the defendant engaged in conduct for the sole purpose of inflicting intentional harm on plaintiffs." *Id.*

Here, the Amended Complaint explains that Elder and G3 raised specious, frivolous, and unfounded claims in the Florida Arbitration and the Michigan Case, which litigation efforts were "designed to result in a termination of the attorney-client relationship" between the Ferraro Firm and TARS. *Id.* ¶¶ 107, 111-113. In fact, the Amended Complaint states that the Michigan Case sought to relitigate the same issues that had been settled in the Florida Arbitration and was

eventually dismissed with prejudice against all defendants. Am. Compl. ¶¶ 10, 112-14. Plaintiffs also plead, as other examples, that G3 and Elder used confidential information to form Huddleston at an opportune time to secretly pursue the Nonrecourse Loan from the Receiver, instructed the Ferraro Firm to cease its work on behalf of TARS in the whistleblower action, and purposefully withheld Cooper's name from the Assignment signature page to conceal his identity from others who would connect him to Elder. Am. Compl. ¶¶ 136-46, 153, 249; Am. Compl., Ex. 5. Moreover, Plaintiffs assert that Huddleston demanded immediate payment as successor-in-interest of the Nonrecourse Loan based on fabricated, non-existent events of default. Am. Compl. ¶¶ 2, 27, 45. The factual allegations plausibly demonstrate that Huddleston, Elder, and G3 had an exclusive purpose to intentionally inflict harm on Plaintiffs. *See Schultz v. North American Ins. Group*, 34 F.Supp.2d 866, 869 (W.D.N.Y. 1999).

Fourth, the Amended Complaint asserts that the frivolous litigation, fabricated payment demands, and the Motion for Substitution of Counsel caused injury to the attorney-client relationship, including past and continuing legal expenses and defense costs, tarnished reputation with the OAG, lost business prospects (*e.g.*, legal fees for prosecuting *qui tam* suit in New York and ultimate recovery as relator). Am. Compl. ¶¶ 158, 175, 197, 213. Defendants argue that Plaintiffs' categories of damages are too speculative and thus insufficient to plead injury. Not true. It is appropriate to determine damages at trial. *See Guard-Life Corp. v. S. Parker Hardware Mfg. Corp.*, 50 N.Y.2d 183, 197, 406 N.E.2d 445, 452 (1980). Indeed, damages for tortious interference in New York are "recognized under the more liberal rules applicable to tort actions." *Int'l Mins. & Res., S.A. v. Pappas,* 96 F.3d 586, 597 (2d Cir. 1996) (citation omitted). Plaintiffs have done enough at this stage.[6]

### B. Cooper

As for Cooper, Plaintiffs cannot state a claim for tortious interference with a prospective business relationship because the second and third elements are not satisfied. First, the Amended Complaint makes an unsupported, conclusory assertion that he had knowledge of the attorney-client relationship with respect to the *qui tam* action and intentionally interfered in it. Am. Compl. ¶ 233. At best, they allege that Cooper signed the December 14, 2020 Assignment to Huddleston and was "us[ed] as a front to fraudulently conceal" that Huddleston was created as a shell entity to mislead the Receiver into allowing its purchase of the Nonrecourse Loan. Am. Compl. ¶¶ 96, 146. But these bare assertions, without more substantiation, are insufficient to plead that Cooper himself knew of the business relationship or intentionally interfered in it (as opposed to simply being used by others). Likewise, the Amended Complaint lacks allegations that Cooper acted out of malice in connection with his involvement with Huddleston. Because neither the second nor third elements are satisfied, Plaintiffs fail to state a claim against Cooper.

In sum, the Amended Complaint proffers sufficient allegations to state a claim for tortious interference with a prospective business relationship against Huddleston, Elder, and G3. The claim against Cooper (Count X), however, is dismissed.

---

[6] Defendants also raise an economic motive or economic justification defense to the tortious interference claims. However, those defenses create factual disputes that are not appropriate on a motion to dismiss.

## II. Plaintiffs Adequately Plead Claims for Tortious Interference with Contractual Relations Against Defendants Huddleston, Elder, and G3

To prevail on a claim for tortious interference with a contract, a plaintiff must allege five things: (1) the existence of a valid contract between the plaintiff and a third party; (2) the defendant's knowledge of the contract; (3) the defendant's intentional procurement of the third-party's breach of contract without justification; (4) actual breach of the contract; and (5) damages. *RSM Production Corp. v. Fridman*, 643 F.Supp.2d 382, 405 (S.D.N.Y. 2009) (citing *Kirch v. Liberty Media Corp.*, 449 F.3d 388, 401-02 (2d Cir. 2006)). Moreover, "the plaintiff must assert, with respect to each defendant, that the defendant's actions were the "but for" cause of the alleged breach." *Id.* To demonstrate "but for" causation, a plaintiff must show that any breach would not have occurred but for the activities of the defendant. *Id.; see Sharma v. Skaarup Ship Mgmt. Corp.*, 916 F.2d 820, 828 (2d Cir. 1990) (citing *Special Event Entm't v. Rockefeller Ctr., Inc.*, 548 F.Supp. 72, 78 (S.D.N.Y. 1978)). A failure by a plaintiff to properly allege any individual element of a tortious interference with a contract claim warrants dismissal. *RSM Production Corp.*, 643 F.Supp.2d at 405.

Plaintiffs state a claim for tortious interference with a contract against Huddleston, Elder, and G3. Based on the Court's analysis above, the first, second, and fifth elements are satisfied. Even though Plaintiffs concede that the Contingency Contract is terminable at will and do not plead that any defendant engaged in intentional interference that resulted in breach of that contract, "[w]here there has been no breach of an existing contract, but only interference with prospective contract rights . . . plaintiff must show more culpable conduct on the part of the defendant." *NBT Bancorp., Inc. v. Fleet/Norstar Financial Group, Inc.*, 664 N.E.2d 492, 495-96 (1996) (citing *Guard-Life Corp. v. Parker Hardware Mfg. Corp.*, 50 N.Y.2d 183,193, 428 N.Y.S.2d 628, 406 N.E.2d 445 (1980)). "Agreements that are terminable at will are classified as prospective contractual relations, and a cause of action to recover damages for the tortious interference with prospective contractual relations requires a showing of malice or wrongful conduct." *Waste Serv., Inc. v. Jamaica Ash & Rubbish Removal Co.*, 262 A.D.2d 401, 402, 691 N.Y.S.2d 150, 151 (1999); *NBT Bancorp., Inc. v. Fleet/Norstar Financial Group, Inc.*, 664 N.E.2d 492, 496 (1996) (citing *Guard-Life Corp*, 50 N.Y.2d at 193, 428 N.Y.S.2d 628, 406 N.E.2d 445. So long as Plaintiffs adequately plead "malice or wrongful conduct," which they have, their claims may survive dismissal. As discussed *supra*, they have sufficiently alleged that Huddleston, Elder, and G3 maliciously and wrongfully interfered in the attorney-client relationship between the Ferraro Firm and TARS.

The Court therefore declines to dismiss the claims for tortious interference of contractual relations against Huddleston, Elder, and G3. The claim against Cooper (Count X) is dismissed for failure to plead malice or wrongful conduct.

## III. Plaintiffs Fail to State a Claim for Breach of Fiduciary Duties Against Elder and G3

The Amended Complaint alleges that Elder and G3 breached fiduciary duties to TARS by engaging in a scheme "to purchase Hamilton's interest in the Nonrecourse Loan Documents to take control of TARS for its own financial benefit and against the interest of TARS and its members." Am. Compl. ¶¶ 205, 221. Under New York law, the elements of a claim

for breach of fiduciary duty are "the existence of a fiduciary duty; [ii] a knowing breach of that duty; and [iii] damages resulting therefrom." *Johnson v. Nextel Commc'ns, Inc.*, 660 F.3d 131, 138 (2d Cir. 2011); *see also MLSMK Inv. Co. v. JPMorgan Chase & Co.*, 431 Fed.Appx. 17, 19 (2d Cir. 2011) (summary order). TARS's theory of liability is based on an alleged joint venture. Under New York law, a joint venture exists where "(a) two or more persons enter into an agreement to carry on a venture for profit; (b) the agreement evinces their intent to be joint venturers; (c) each contributes property, financing, skill, knowledge, or effort; (d) each has some degree of joint control over the venture; and (e) provision is made for the sharing of both profits and losses." *SCS Commc'ns, Inc. v. Herrick Co., Inc.*, 360 F.3d 329, 341 (2d Cir. 2004) (citing *Itel Containers Int'l Corp. v. Atlanttrafik Express Serv., Ltd.*, 909 F.2d 698, 701 (2d Cir. 1990).

TARS fails to plead the existence of a joint venture with Elder or G3. *First*, there was no mutual agreement expressing an intent to be joint venturers. The Consulting Agreement clearly states that G3 is an "independent contractor" and agreed to perform consulting services on behalf of, rather than in equal partnership or ownership with, TARS. Am. Compl., Ex. 3. Plaintiffs also admit that Elder "agreed to serve only as a consultant to TARS." Am. Compl. ¶ 68. *Second*, TARS fails to plead that Elder or G3 had some degree of joint control. For instance, there are no allegations or extrinsic evidence demonstrating that Elder or G3 held decision-making power. *See SCS Commc'ns, Inc.*, 360 F.3d at 341 ("The requisite degree of joint control is located in the contract requirement that all acquisition and financing terms would require approval by each party."); *Brown v. Cara*, 420 F.3d 148, 160 (2d Cir. 2005) (affirming lower court ruling that joint venture had not been formed in part because there was no "measure of joint proprietorship and control over the enterprise"). TARS fails to plead at least two of the requisite elements for establishing a joint venture. "[T]he absence of any one of these elements is fatal." *Goureau v. Goureau*, No. 12-CV-6443(PAE), 2013 WL 417353, at *4 (S.D.N.Y. Feb. 4, 2013) (internal citation and alteration omitted).[7] Thus, the claims for breach of fiduciary duty against Elder (Count VI) and G3 (Count VIII) are dismissed.

**IV. Plaintiffs Adequately Allege a Claim for Civil Conspiracy Against Huddleston, Elder, and G3**

Plaintiffs allege that all Defendants collectively engaged in a corrupt scheme with the common purpose of taking control of TARS in connection with the *qui tam* suit, terminating the attorney-client relationship, and depriving the Ferraro Firm of legal fees and costs to which it is entitled. Am. Compl. ¶ 248.

"To establish a claim of civil conspiracy, the plaintiff must demonstrate that [1] the primary tort, plus the following four elements: [2] an agreement between two or more parties, [3] an overt act in furtherance of the agreement, [4] the parties' intentional participation in the furtherance of a plan or purpose, and [5] resulting damage or injury. *Cohen Brothers Realty Corp. v. Mapes*, 181 A.D.3d 401, 119 N.Y.S.3d 478 (1st Dep't 2020).

---

[7] The Ferraro Firm is not a party to the Consulting Agreement and the Amended Complaint contains no allegations that the firm formed a joint venture with any defendant in this case. Accordingly, the Ferraro Firm cannot state a cognizable claim for breach of fiduciary duty on a joint venture theory.

Plaintiffs have pleaded the primary tort (tortious interference with business and contractual relations); an agreement among the parties (Am. Compl. ¶ 249); overt acts specific to Huddleston, Elder, and G3 (Am. Compl. ¶¶ 249(a), 249(c)); intentional participation in the furtherance of a common scheme by Huddleston, Elder, and G3 (Am. Compl. ¶¶ 1-2, 24, 27, 29-32, 136-142, 146-151, 153-156, 248-250); and injury. Plaintiffs sufficiently state a claim for civil conspiracy against Huddleston, Elder, and G3. Because no primary tort is adequately alleged against Cooper, the count against him is dismissed.

## V. TARS Has Sufficiently Plead Article III Injury

Defendants argue that TARS lacks constitutional standing because it has not pleaded Article III injury. The Court disagrees. Taking the allegations as true, TARS has sufficiently alleged a real and immediate threat of injury based on the likely termination of their business relationship with the Ferraro Firm representing them in the *qui tam* action. TARS was formed to act as relator in *qui tam* actions seeking recovery of unremitted life insurance proceeds in certain states. Termination of the attorney-client relationship would likely frustrate their purpose. Because "the threat of injury" is "both real and immediate," there is no standing issue. *Shain v. Ellison*, 356 F.3d 211, 215 (2d Cir. 2004).[8]

## CONCLUSION

In conclusion, Cooper's motion is **granted**. Count X and Count XII (solely as to Cooper) is dismissed. Huddleston's motion is **denied**. G3 and Elder's motion is **denied in part and granted in part**. Count VI and Count VIII are dismissed. The Clerk of Court is directed to terminate the motions at ECF Nos. 72, 76, and 92.

**SO ORDERED.**

**Dated: April 4, 2022**
**New York, New York**

**Andrew L. Carter, Jr.**
**United States District Judge**

---

[8] Defendants also argue that TARS lacks corporate authority to bring this suit. That question depends on the validity of the Assignment, whether an event of default has occurred, among other factual disputes. The Court need not reach these issues on a motion to dismiss.