**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------ x
                                                        :

TOTAL ASSET RECOVERY SERVICES, LLC,
SCOTT KNOTT, GREGORY LYNAM, THOMAS
PRESCOTT, STEVEN LYNAM, RZE HOLDINGS
LLC, AND THE FERRARO LAW FIRM, P.A.,

                            Plaintiffs,

-against-

HUDDLESTON CAPITAL PARTNERS VIII LLC,
KENNETH ELDER, G3 ANALYTICS LLC, NOLAN
COOPER, KRISTINA PHELAN, AND TIMOTHY D.
SCRANTOM,

                            Defendants.

------------------------------------------------------------------ x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#: _____
DATE FILED: April 15, 2022

1:21-CV-2466-ALC

**AMENDED ORDER**
**DENYING MOTION TO**
**DISQUALIFY COUNSEL**

**ANDREW L. CARTER, JR., United States District Judge:**

      Defendant Huddleston Capital Partners VIII LLC ("Huddleston") moved to disqualify James Ferraro and the Ferraro Law Firm (the "Ferraro Firm")— both a plaintiff in this case and counsel for Plaintiffs Total Asset Recovery Services ("TARS") and its five members named Gregory Lynam, Scott Knott, Thomas Prescott, Steven Lynam, and RZE Holdings (together, the "Individual Member Plaintiffs"). Huddleston largely contends that James Ferraro and the Ferraro Firm cannot serve as witness and advocate in this matter and that there are multiple concurrent conflicts of interests calling for disqualification. Given this early stage in the litigation, Huddleston provides little evidence—such as affidavits, documentary exhibits, or other proof—to accompany this motion. Because the motion is based on Huddleston's unsupported speculation regarding the impact of continued representation by the Ferraro Firm, the Court concludes that Huddleston has failed to meet the high bar for disqualification of counsel. The motion is **DENIED.**

      The Court assumes the parties' familiarity with the factual background in this case. ECF No. 120. Huddleston filed the motion to disqualify counsel on August 12, 2021. ECF Nos. 74-75. Plaintiffs opposed on September 17, 2021. ECF No. 94. Huddleston replied on October 5, 2021. ECF No. 100. The Court deems this motion fully briefed.

      In essence, Huddleston argues several grounds for disqualification. First, it states that Mr. Ferraro is a necessary witness that should be disqualified under the witness-advocate rule.

Second, it advances an argument that the Ferraro Firm—both a plaintiff and counsel in this case—has differing interests from Plaintiff TARS and the Individual Member Plaintiffs. Huddleston also contends that there are diverging interests among Plaintiff TARS and the Individual Member Plaintiffs. The Court concludes that there is insufficient proof at this stage to grant disqualification.

**There Is Insufficient Proof that James Ferraro Is a Necessary Witness in this Litigation, So Disqualification Based upon the Witness-Advocate Rule Is Unwarranted**

"A party's entitlement to be represented in ongoing litigation by counsel of his or her own choosing is a valued right which should not be abridged absent a clear showing—on which the party seeking disqualification carries the burden—that counsel's removal is warranted." *Whitman Breed Abbott & Morgan v. Oram,* 300 A.D.2d 135, 136, 752 N.Y.S.2d 623, 624 (2002) (collecting cases). "Disqualification denies a party's right to representation by the attorney of its choice." *S & S Hotel Ventures Ltd. P'ship v. 777 S.H. Corp.*, 69 N.Y.2d 437, 443, 508 N.E.2d 647, 650 (1987) (citation omitted). "[W]here the Code of Professional Responsibility is invoked not in a disciplinary proceeding to punish a lawyer's own transgression, but in the context of an ongoing lawsuit, disqualification of a plaintiff's law firm can stall and derail the proceedings, redounding to the strategic advantage of one party over another." *Id.* "When raised in litigation . . . the Code provisions cannot be applied as if they were controlling statutory or decisional law." *Id.* "[T]he rule provides guidance for courts in determining whether a party's law firm, at his adversary's instance, should be disqualified during a litigation." *Forward v. Foschi*, 27 Misc. 3d 1224(A), 911 N.Y.S.2d 692 (Sup. Ct. 2010).

>Under Rule 3.7(a) of the New York Rules of Professional Conduct:
>
>A lawyer shall not act as advocate before a tribunal in a matter in which the lawyer is likely to be a witness on a significant issue of fact unless:
>>(1) the testimony relates solely to an uncontested issue;
>>(2) the testimony relates solely to the nature and value of legal services rendered in the matter;
>>(3) disqualification of the lawyer would work substantial hardship on the client;
>>(4) the testimony will relate solely to a matter of formality, and there is no reason to believe that substantial evidence will be offered in opposition to the testimony; or
>>(5) the testimony is authorized by the tribunal.

NY ST RPC Rule 3.7 (McKinney). Motions for disqualification, especially those based upon the witness-advocate rule, are "subject to fairly strict scrutiny." *Murray v. Metro. Life Ins. Co.*, 583 F.3d 173, 178 (2d Cir. 2009) (quoting *Lamborn v. Dittmer,* 873 F.2d 522, 531 (2d Cir. 1989)).

Here, Huddleston drops the ball, having failed to demonstrate that James Ferraro is a necessary witness on a significant issue of fact. It contends that James Ferraro will need to provide testimony on three specific factual issues: (1) whether an event of default occurred under the Loan Agreement, (2) whether there was a contractual or business relationship between the

Ferraro Firm, and (3) the categories of damages resulting from Defendants' allegedly tortious conduct.

Huddleston has adduced no proof, beyond the mere fact that James Ferraro is counsel in the stayed *qui tam* litigation, that he is a necessary witness in *this* litigation. Indeed, Huddleston acknowledges that the Individual Member Plaintiffs would testify regarding the performance of their obligations, including whether events of default occurred, under the Loan Agreement. Def.'s Mem. at 12-13. Plaintiffs also contend that the lender, members of the New York Office of the Attorney General (NYOAG) who controlled the *qui tam* action for many years before the case was unsealed, and prior Ferraro Firm attorneys, would be relevant witnesses on this question of fact. Pl.'s Opp. at 11-12. Indeed, James Ferraro has no personal knowledge of the negotiation of the Nonrecourse Loan, as Plaintiffs represent. Pl.'s Opp. at 12. Based on the Amended Complaint, there are other witnesses, including Defendant Kenneth Elder, that can provide useful testimony about the negotiations surrounding the Nonrecourse Loan. Pl.'s Opp. at 12.

There is also no dispute over the existence of a contractual or business relationship between the Ferraro Firm and TARS. Documentary evidence of the Contingency Contract would be more than sufficient to prove a contractual and business relationship. Were oral testimony even necessary, Plaintiffs correctly argue that James Ferraro would not need to testify. There are other witnesses, such as the Individual Member Plaintiffs—who engaged the Ferraro Firm in the first place—and NYOAG members involved with the *qui tam* action, that can do so. The Amended Complaint also raises allegations that at least Elder knew of the existence of the attorney-client relationship between the Ferraro Firm and TARS. Finally, even if James Ferraro was a necessary witness on this issue, such testimony would be uncontested, and therefore could not support disqualification. *See* Rule 3.7(a)(1).

Regarding categories of damages for tortious interference, the Individual Member Plaintiffs and expert witnesses could provide testimony, in addition to documentary evidence reflecting damages resulting from the allegedly tortious and conspiratorial conduct received from certain defendants during discovery. At this stage, the Court has no reason to believe that the Ferraro Firm would not possess—and could exchange during discovery—documentary evidence regarding any damage to the firm. Even testimony from non-legal staff at the firm could prove any direct damage or loss. Again, Huddleston has failed to demonstrate how or why James Ferraro himself would be a necessary witness on the scope of damages in this case.

**There Is Insufficient Proof that James Ferraro Is a Likely Witness and Would Provide Adverse Testimony Prejudicial to his Clients**

Huddleston argues that the Ferraro Firm must be disqualified because the Amended Complaint reflects that James Ferraro would provide testimony that would prejudice one of the plaintiffs: the Ferraro Firm, TARS, or the Individual Member Plaintiffs. It also states that there are conflicts of interest among TARS and the Individual Member Plaintiffs. However, these arguments are unavailing.

Under Rule 3.7(b),

> A lawyer may not act as advocate before a tribunal in a matter if:
> > (1) another lawyer in the lawyer's firm is likely to be called as a witness on a significant issue other than on behalf of the client, and it is apparent that the testimony may be prejudicial to the client; or
> > (2) the lawyer is precluded from doing so by Rule 1.7 or Rule 1.9.

NY ST RPC Rule 3.7 (McKinney). "The movant, therefore, bears the burden of demonstrating specifically how and as to what issues in the case the prejudice may occur and that the likelihood of prejudice occurring [to the witness-advocate's client] is substantial." *Murray*, 583 F.3d at 178 (quoting *Lamborn,* 873 F.2d at 531) (internal quotation marks omitted and alterations in original). "Prejudice in this context means testimony that is 'sufficiently adverse to the factual assertions or account of events offered on behalf of the client, such that the bar or the client might have an interest in the lawyer's independence in discrediting that testimony.'" *Id.* In New York, a showing a prejudice requires:

> proving the ultimate reason for disqualification: harm to the integrity of the judicial system. [The Second Circuit] ha[s] identified four risks that Rule 3.7(a) is designed to alleviate: (1) the lawyer might appear to vouch for his own credibility; (2) the lawyer's testimony might place opposing counsel in a difficult position when she has to cross-examine her lawyer-adversary and attempt to impeach his credibility; (3) some may fear that the testifying attorney is distorting the truth as a result of bias in favor of his client; and (4) when an individual assumes the role of advocate and witness both, the line between argument and evidence may be blurred, and the jury confused. *Ramey v. Dist. 141, Int'l Ass'n of Machinists & Aerospace Workers,* 378 F.3d 269, 282–83 (2d Cir. 2004) (internal citations and alterations omitted).

*Id.*

First, as discussed above, it is not necessary that James Ferraro be called as a witness to testify on alleged events of default under the Nonrecourse Loan or the Michigan case (*i.e.*, the alleged second tortious interference). The Loan Agreement itself, documentary evidence regarding its interpretation, and testimony from the Individual Member Plaintiffs (particularly whether they fully met their obligations), for instance, demonstrates that testimony from James Ferraro is not necessary. Regarding the Michigan case, there appears to be sufficient documentary evidence, including the full state court docket, and any testimony that James Ferraro would offer would only be cumulative of those documents and any testimony provided by the Individual Member Plaintiffs that Elder and Defendant Timothy Scrantom sought to interfere in the contractual and business relationship between the Ferraro Firm and TARS. Huddleston has made no showing that James Ferraro is likely to be called as a witness on either issue, so Rule 3.7(b) is not triggered.

Because Huddleston fails to demonstrate that James Ferraro would be likely to testify on these issues, the request to disqualify should be denied. However, the Court will also supplement its conclusion on the basis that Huddleston wholly speculates about whether declining to disqualify the firm would prejudice plaintiffs in this case. The standard requires clear and convincing evidence of prejudice to the client(s) or that continued representation would harm the

integrity of the judicial system. Such evidence is not provided. *Murray,* 583 F.3d 173, 178–79 (citing *Lamborn*, 873 F.2d at 531).

**Given This Early Stage, a Reasonable Lawyer Would Not Conclude That There are Conflicting Interests Warranting Disqualification of the Ferraro Firm**

"The standard for disqualification depends on whether the representation is concurrent—meaning the lawyer represents two or more current clients at the same time—or successive—meaning the attorney represents a current client against, or whose interests are adverse to those of, a former client." *Tour Technology Software, Inc. v. RTV, Inc. et al.,* No. 17 CV 5817, 2018 WL 3682483, at *3 (E.D.N.Y. Aug. 2, 2018). An attorney engaging in concurrent representation will be disqualified unless he or she can "show, at the very least, that there will be no actual or *apparent* conflict in loyalties or diminution in the vigor of his representation." *Hempstead Video v. Incorp. Village of Valley Streami*, 409 F.3d 127, 133 (2d Cir. 2005) (emphasis in original). Under Rule 1.7,

> (a) Except as provided in paragraph (b), a lawyer shall not represent a client if a reasonable lawyer would conclude that either:
>> (1) the representation will involve the lawyer in representing differing interests; or
>> (2) there is a significant risk that the lawyer's professional judgment on behalf of a client will be adversely affected by the lawyer's own financial, business, property or other personal interests.
>
> (b) Notwithstanding the existence of a concurrent conflict of interest under paragraph (a), a lawyer may represent a client if:
>> (1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;
>> (2) the representation is not prohibited by law;
>> (3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and
>> (4) each affected client gives informed consent, confirmed in writing.

NY ST RPC Rule 1.7 (McKinney).

Huddleston argues that there is an extensive web of differing interests among the plaintiffs. It asserts that the Individual Member Plaintiffs interests diverge because Plaintiffs Knott and Lynam "are attorneys at and have a longstanding relationship with the Ferraro Firm" where the Individual Member Plaintiffs should be "indifferent as to what firm represents TARS." Def.'s Mem. at 20. It also separately contends that the Ferraro Firm has differing interests from TARS and its members because the firm wants to remain counsel in the *qui tam* action where TARS and its members have no need to have the Ferraro Firm continue as counsel in that case. But these arguments are merely wild guesses about the plaintiffs' choice of counsel. The Amended Complaint suggests that TARS and its members would have a shared interest in proving that no events of default occurred under the Nonrecourse Loan. Huddleston has proffered no evidence otherwise. There is also no evidence, for instance, that Knott and Lynam

somehow colluded or coerced the other members to retain the Ferraro Firm as counsel in this case. In fact, it is more reasonable that they would retain the Ferraro Firm here because of their longstanding attorney-client relationship in other matters, including the *qui tam* lawsuit.

Huddleston raises another argument that there are differing interests among the Individual Member Plaintiffs because they hold different percentage interests, and thus decision-making power, regarding TARS. Huddleston merely speculates that the voting structure "sets the stage for conflicts of interest," but there is insufficient evidence substantiating a conflict of interest between them. Def.'s Mem. at 12. Furthermore, the Amended Complaint contends that the Individual Member Plaintiffs only have obligations under the Nonrecourse Loan if TARS prevails in the *qui tam* action. Thus, at this early stage, it appears that the Individual Member Plaintiffs are not misaligned based upon their personal obligations under the Loan Agreement. As a matter of fact, as alleged, they seem to have some shared interest in whether they are each required to perform under the Nonrecourse Loan since that obligation rises and falls with the success or failure of the whistleblower suit.

Huddleston raises concerns about the potential for crossclaims among the plaintiffs in this case. But no plaintiff has filed a crossclaim against any other plaintiff. There is also no indication that any plaintiff intends to do so. Even though Huddleston crafts a hypothetical narrative about the divergent interests among Plaintiffs, this is a nonissue under Rule 1.7 because Huddleston focuses solely on speculating about the potential possibility of crossclaims.

Finally, Huddleston boldly asserts that there is a significant risk that, due to the Ferraro Firm's financial interest in continuing representation of TARS in the *qui tam* action, its exercise of professional judgment on behalf of TARS and the Individual Member Plaintiffs in this litigation is tainted. Even if this Court determined that there were concurrent conflicts of interest warranting disqualification, Plaintiffs' counsel represented that the Ferraro Firm, the Individual Member Plaintiffs, and TARS "have considered the potential conflicts of interest . . . and determined that it is in their best interest to engage the Ferraro Firm to represent their interest in this action collectively." Pl.'s Opp. at 23.

At this early stage in the litigation, where the evidence for disqualification of James Ferraro and the Ferraro Firm is paltry, where the grounds for disqualification are built on guesswork, and where discovery would illuminate evidentiary support, if any, regarding whether James Ferraro is a necessary witness and whether there is meat on the bones of the alleged conflicts of interest, this Court concludes that disqualification of James Ferraro and the Ferraro Firm is not warranted at this time.

Huddleston's motion to disqualify is **DENIED**. The Ferraro Firm should submit supporting documentation of its clients' informed consent with respect to the alleged concurrent conflicts of interest within 30 (thirty) days of the date this Order is issued.

**SO ORDERED.**

**Dated: April 15, 2022**
**New York, New York**

**ANDREW L. CARTER, JR.**
**United States District Judge**